MARYLAND AND NEW YORK COAL AND IRON COMPANY, *vs.*
PHILIP WINGERT.—*December,* 1849.

The answer of a corporation, under its corporate seal, has the same force and effect, as evidence, as the answer of an individual not under oath would have in a like case, and no other or greater.

Where a party purchases lands with knowledge, actual or implied, of an outstanding incumbrance, he must stand in the same situation in which his vendor stood before alienation.

A bond of a mortgagor, for $6,000, secured by mortgage, was paid at its maturity, (1st of April, 1839,) by a check of the obligor for $5,000, and his promissory note for $1,270, payable 1st of April, 1840.   Receipts for this check and note were endorsed on the bond, which was delivered up to the obligor.   The note not being paid at maturity, it was HELD:

That, in the absence of proof of an express agreement to that effect, these receipts, and the delivery up of the bond, did not extinguish the lien of the mortgage.

The acceptance of a note will not extinguish a debt, unless there be an ex-

press contract or agreement to receive it as an absolute payment, and to run the risk of its being paid.

The issuing, by consent of parties, a commission to take testimony generally, without limitation as to the nature and purpose thereof, is regarded, in *Maryland*, as an admission that the issues are made up, and the general replication to defendant's answer entered.

Appeal from the equity side of *Washington* county court.

The original bill was filed by the appellee, on the 5th of March, 1842, for the sale of certain lands which had been mortgaged to him by one *Lewis Howell*, and afterwards conveyed by said *Howell* to the appellant, for payment of a balance due on the mortgage debt. The allegations of both the original and amended bills and answers thereto, together with the facts in the case, the several exhibits filed in the cause, and the testimony taken under the commission, are sufficiently stated in the opinion of this court.

The answers were under the corporate seal of the defendant, attested by the signature of its president. After the answer to the amended bill was filed, a commission was issued, by agreement of parties, to take testimony on the part both of complainant and defendant, and it does not appear from the record, that the general replication was ever entered.

On the 3rd of November, 1848, the court (MARTIN, C. J.,) passed a decree for the sale of the mortgaged premises, in accordance with the prayer of the bill. From this decree the defendant appealed.

The cause was argued before DORSEY, C. J., CHAMBERS, SPENCE, MAGRUDER, and FRICK, J.

By SEMMES, and PERRY, for the appellant, and
By WM. PRICE, for the appellee.

SPENCE, J., delivered the opinion of this court.

The allegations in the original bill are, that on the 28th day of May, in the year 1838, a certain *Lewis Howell*, then of the city of *New York*, being indebted to the complainant in sundry

large sums of money, viz: the sum of $6,000, payable on the 1st day of April, 1839; also in the sum of $3,250, payable the 1st day of April, 1840; also the sum of $3,250, payable the 1st day of April, 1841; and also in sundry other large sums of money not then demandable; and intending to secure the payment of the said several sums of money to the complainant, did, on the 28th day of April, 1838, convey to the complainant certain real estate in *Allegany* county, particularly described in said deed. In which deed there is a condition, that it should be void, if said *Howell* paid the said several sums at the said several times in the said deed stated.

The bill also charges, that said *Howell* did, on the 31st day of October, 1838, by his deed, convey to the *Maryland and New York Iron and Coal Company*, the same real estate mortgaged to the complainant. That the *Maryland and New York Iron and Coal Company* was, at the date of said deed to them, and had continued to be, a body corporate. The bill states, that said *Howell* had not paid either of the said several sums of money, or any part of them, or either of them, but admits that the complainant had been paid, by said company, sundry sums. It admits the payment of $3,250, and the interest thereon, which was demandable on the 1st day of April, 1841; the payment of the sum which was demandable on the 1st day of April, 1840, and the interest which had accrued thereon. And of the sum of $6,000, which was payable on the 1st day of April, 1839, the complainant admits the payment of $5,000, together with the interest thereon, but charges expressly, that of this last mentioned sum, there remained due and unpaid the sum of $1,000, with interest thereon, from the 1st day of October, 1838. The answer of the respondent, to the bill, admits the allegations of the bill, except that the several sums of money charged by the bill or any part of either of them, was still due and unpaid, but avers that each and all of said several sums of money had been paid, and the bonds or single bills, the evidence of said indebtedness, had been surrendered and delivered up to the defendant, to be cancelled.

The respondent files, as exhibits with his answer, the several

bills obligatory, with the endorsements thereon, marked defendant's exhibits No. 2, No. 3, No. 4, No. 5. Subsequently, in the progress of this cause, the complainant asked and obtained leave to file an amended bill.

The amended bill charges, that the original contract, made with the complainant, for the purchase of the mortgaged lands mentioned in this controversy, was made by said *Howell* and a certain *George McCulloh,* as agents for the *Maryland and New York Iron and Coal Company,* with the complainant, and that said *Howell,* in said contract, was the agent for said company, and nothing more.

The bill alleges, that on the day the mortgage deed was executed by said *Howell,* he executed to the complainant bonds corresponding with the sums and dates mentioned in said mortgage, for $19,000; and the bill admits that the whole of the mortgage debt has been paid to the complainant, except the sum of $1,270, with the interest thereon, from the 1st of June, 1839, part of the sum of $6,000, mentioned in said mortgage, and by it made payable on the 1st day of April, 1839, which sum, or any part thereof, the bill charges, has never been paid to the complainant.

The amended bill charges, that at the date of the deed from *Lewis Howell* to the *Maryland and New York Iron and Coal Company,* no part of the purchase money had been paid by said *Howell* to the complainant, but the whole amount of the purchase money was a lien on the land. The amended bill also charges, that the whole amount of the purchase money which had been paid to complainant, was paid by said company, and that said *Howell* never paid any sum or sums on said claim, except as the agent of said company.

The respondent's amended answer to the amended bill, denies that *Lewis Howell* acted as the agent of the respondent, in the purchase of the land in question from complainant. It denies that the purchase was, in fact or intent, made by itself, through any authorised agent. The answer also denies that the whole of the moneys paid to the complainant, on account

of the purchase from him, or any part thereof, was paid to him by the respondent.

The first question which the bills and answers present for our review and decision is: Whether the *Maryland and New York Iron and Coal Company* were *bona fide* purchasers for valuable consideration, without notice of the lien of the complainant, under his mortgage deed? We consider the answer and amended answer of this corporation as having the same force and effect, as evidence, as the answer of an individual not under oath, would have in like cases, and no other or greater.

By the act of Assembly of 1837, ch. 218, passed on the 1st of March, 1837, the respondent in this suit was incorporated by the name of the *Maryland and New York Iron and Coal Company*. The only persons named in this act as corporators, are *Lewis Howell*, *Benjamin B. Howell*, and *Henry W. Howell*. It is shown by *Mr. Semmes'* evidence, that *Benjamin B. Howell*, who was the father of *Lewis Howell*, was president of the company at the time of these transactions between *L. Howell* and *P. Wingert*.

The complainant's exhibit C, which is the original contract made with *Wingert*, for the lands in question, was executed on the 22nd day of May, 1838, by *Philip Wingert* of the one part, and *Lewis Howell* of the other, by *George McCulloh*, his agent. This land was conveyed by deed of bargain and sale, by *Wingert*, the complainant, to *Lewis Howell*, the respondent, on the 23rd day of May, 1838. The mortgage deed and bills obligatory, for securing the purchase money for said land, were executed by *Lewis Howell*, in favor of *Philip Wingert*, on the 28th day of May, 1838. The deed from *Lewis Howell* to the *Maryland and New York Iron and Coal Company*, is dated the 31st of October, 1838.

We may here premise, that we are led into the inquiry of the *bona fides* of the sale of this land from *Howell* to the company, without notice of the incumbrance under *Wingert's* mortgage, from the argument of the appellant's solicitor, and not from such a defence set up by the answer. The answer

does not charge that the *Maryland and New York Iron and Coal Company* was a *bona fide* purchaser of this land, without notice of *Wingert's* lien under his mortgage deed.

We think the facts and circumstances, in connection with the evidence disclosed in the record, go very far to establish the fact, that *Lewis Howell* was acting in the character of agent or representative of this company, in the purchase of this land. The first section of the act of incorporation (1837, ch. 218,) names but three individuals, the first of whom is *Lewis Howell.* The second section fixes the amount of capital stock of said company, to wit: five thousand shares, of one hundred dollars each, of which the lands and mines of the said *Lewis Howell,* in *Allegany* county, shall constitute a part. This provision of the act referred to the lands which said *Howell* owned at the time of its enactment, namely, the 3rd of March 1837.

*George McCulloh,* a witness on the part of the complainant, by whom the contract for this land was made with *Wingert,* as set forth in complainant's exhibit C, when interrogated *"* whether the lands in relation to which the said agreement was made, were or were not intended, at the time, for the *Maryland and New York Iron and Coal Company?"* answers and says, " that he believes they were ; *Mr. Benjamin B. Howell* and *Lewis Howell* sent him to *Hagerstown,* for the purpose of making the purchase of *Mr. Wingert,* for the company." To the question, whether *Lewis Howell* purchased the lands with his own means, or the means of others? answers, "that the lands, as he believes, were paid for by the means of others; the *Messrs. Howells* told him they were raising money from certain gentlemen, their associates, and were also using money of their own in making the purchases "

We think that the amended answer of the respondent throws very convincing light on this question of notice or knowledge of the transaction between *Howell* and *Wingert.* It states, "that after this, defendant had purchased the same land from the said *Howell,* it, of course, became interested to know whether the bonds executed as aforesaid, by the said *Howell* to the complainant, and which had been secured by a mortgage

on the lands, as aforesaid, were paid, and taken up, and can-celled." "That the first payment which this defendant under-took to make to the said complainant, in discharge of any of the said bonds, was the payment of the bond falling due the 1st day of April, 1842."

The answer further states, "that an adjustment and final settlement of all business between this defendant and the said *Lewis Howell*, having previously taken place, and said adjust-ment and settlement having been made in part, upon the basis that the unpaid bonds held by the complainant, were to be paid and discharged by this defendant, it thereupon took upon itself the duty, as it was bound to do, of paying these bonds."

No unbiased mind can read this answer without coming to the conclusion, that the respondent had not only such knowledge of this transaction between *Howell* and *Wingert*, and especially of the bonds and mortgage which *Wingert* held against *Howell* and the land, as to put the company upon inquiry, but that this company assumed and promised to pay off and discharge these incumbrances. It is true the answer insists, that the re-spondent considered the surrender of the bill obligatory, with the endorsements thereon, which was payable the 1st of April, 1837, an extinguishment of the debt for which it was given. These endorsements were a receipt for a check on the *Mineral Bank of Maryland*, for $5,000, and a receipt for a promissory note of *Lewis Howell*, for $1,270.

The answer admits knowledge of the fact, that the debt of which this bill obligatory was evidence, was secured by the mortgage.

From the evidence and admissions in this case, it is our opinion that the respondent acted with full knowledge, actual or implied, and must, therefore, stand in the same situation as *Lewis Howell* would have done, if he had not aliened these lands.

The next question which we are to consider is:. did the sur-render and delivery up of the bill obligatory, which became de-mandable on the 1st day of April, 1839, extinguish *Wingert's* lien under his mortgage?

*Chief Justice Parsons* says, in the case of *Davis vs. Maynard*, 9 *Mass. R.*, 237: "The mortgage and the note were two distinct securities. Nothing but the payment of the debt will discharge the mortgage."

The case of *Glenn vs. Smith*, 2 *G. & J.*, 512, decides, "that to give to the acceptance of a note the effect of an absolute payment or extinguishment of a debt, a contract that it should be so, must be shown; an express agreement to receive it as payment, and to run the risk of its being paid, which is not sufficiently done by the receipt in this case."

It was insisted, in the argument of this case, that an express agreement was not the only mode by which the acceptance of *Howell's* promissory note could be made to operate an extinguishment of the mortgage debt. But that such an understanding of the parties might be implied from facts and circumstances.

If we were disposed to admit this doctrine, which we do not, since the decision in *Glenn vs. Smith*, the facts and circumstances in this case would not justify such an implication. To infer, from the fact of *Wingert's* delivering up of *Howell's* bill obligatory, and taking his promissory note for a balance which was due on it, which balance was secured by a mortgage, is proof that he, *Wingert*, intended thereby to extinguish his lien under his mortgage, and take the risk of collecting the money, though the note only would be to presume *Wingert* destitute of the care and prudence which every man of common prudence would exercise in such a transaction.

That these acts will not work an extinguishment of a mortgagee's lien, is conclusively settled on authority. *Vide* the case of *Teed vs. Carruthers*, 2 *Younge and Collyer's Rep.*, 31. In this case, a debt of £10,000 was secured by mortgage from *Carruthers*, the defendant, to *Teed*, the plaintiff. Subsequently, *Carruthers*, the mortgagor, gave to *Teed*, the mortgagee, a check for £7,000, in part discharge of the mortgage debt. He also gave to the plaintiff, *Teed*, two bills of exchange, one for £1,600, and the other for £1,500, intended to be in discharge

of the £3,000, the residue of the principal mortgage money, and the interest then due on the security.

Upon the receipt of the check, and the bills of exchange, the plaintiff gave a receipt for the mortgage money and interest, and the plaintiff delivered up the title deeds and mortgage deeds to the defendant.

The check for £7,000 was subsequently paid. The two bills of exchange were dishonored, and not paid.

*Teed*, the mortgagee, filed his bill, and among other things, prayed for redemption, and in default of redemption, for a foreclosure of the equity of redemption in the premises.

*Carruthers*, in his answer, among other matters, stated as his defence, that in pursuance of arrangements, the plaintiff, upon such payments being made to him, as aforesaid, delivered up to the defendant the mortgage deeds and title deed, and at the same time, gave to the defendant a receipt in writing, signed by the plaintiff, as follows:

"Received this day, of *John Carruthers, Esq.*, the sum of £7,000, in cash, and two bills of exchange, as under, for £3,-120, drawn by *Messrs. Carruthers & Co.*, one dated 16th December, for £1,620, the other dated the 23rd of December, for £1,500, and which check for £7,000, and bills for £3,120, making, together, £10,120, are in full of principal and interest due to me upon a mortgage of *Mr. Carruthers*, freehold property in *Kent* and *Sussex*, for £10,000; and I do hereby undertake, when required, to execute a conveyance of said property.                    THOMAS TEED."

The vice chancellor, in his opinion in this case says: "If I were satisfied that the agreement between them was understood and intended by them to be, that the mortgaged estate should be absolutely discharged, whether the bills were honored or dishonored, productive or waste-paper, however unusual or improvident I might consider such an agreement, I might very possibly have thought it right to give effect to such a contract clearly proved." The vice chancellor, in this case, decreed a foreclosure.

It was suggested, in the argument, that no replication had

been filed in this case. In *England,* after a commission has been issued by consent, and testimony has been taken, courts of equity consider the replication so much a matter of form, as that they will allow it to be filed *nunc pro tunc,* even after decree. *Mosely's Rep.,* 296, *Rodney vs. Hare, et al.*

In *Maryland,* the issuing, by consent of parties, a commission to take testimony generally, without limitation as to the nature and purposes thereof, is regarded as an admission that the issues are made up, and that the general replication to the defendant's answer, has been entered by the complainant. To reject, at the instance of the defendant, the testimony taken under such circumstances, would work surprise upon the plaintiff. And to permit such an objection, when not taken in the court below, to be raised in the appellate court, where its omission cannot be remedied, would, in its consequences, however unintentional, be permitting a defendant to practice a fraud upon a complainant, which might be fatal to his interests.

Upon principle and authority, we are of opinion the county court were correct, and affirm the decree, with costs.

DECREE AFFIRMED.