# The West Branch Insurance Company *versus* Helfenstein.

`| 40   289|`
`|£200  342|`

*Fire Insurance.—Effect of Partial Sale and Joint Possession of Insured Property.—Notice of Loss when sufficient.—Parol Evidence of Contents of Written Papers, when Admissible.—Assignment by Insured Party after Loss.—Effect of on Policy.*

1. The law of the relation between insurers and the assured, is the policy of insurance, with all its clauses, conditions and stipulations, by which their mutual rights and liabilities are defined and measured.

2. In a policy obtained by a merchant upon his storehouse, and upon his stock of goods therein, each for a certain sum, there was a condition that "in case of any transfer, partial transfer or change of title in the property insured, such insurance shall be void and of no effect," &c. He afterwards sold a part of his stock, without notice to or with the consent of the company, and leased the lower story of his store to the purchasers, occupying himself the second story and the cellar with the balance of his stock, which, at the time of the fire, exceeded in value the insurance obtained on his goods.

*Held*, that he had not forfeited his right to indemnity by failing to give

4 WR.—19

notice of the partial sale, but was entitled to recover the amount of his insurance, it being upon merchandise, which is to be used for traffic and commerce, and not as property to be kept unchanged.

3. The admission under lease of the purchasers of part of the stock, to the joint possession of the store building, was not a breach of the covenant; for the condition forbidding the transfer or change of *title* in the property insured, without the assent of the company, does not include a lease which changes only the possession.

4. Where notice of the loss was required to be given to the secretary of the company by the assured, *in writing*, a written notice to the secretary from the local agent, upon information conveyed to him by the assured, is sufficient.

5. A condition that notice of the loss be given to the company *forthwith*, requires from the assured due diligence under all the circumstances of the case; therefore, notice of a fire at T. on Saturday, given verbally to the local agent at S., twelve miles distant, and by him communicated to the secretary at L., seventy miles distant, within five days after the fire, on the following Wednesday, is a substantial compliance with the requirement of the policy, and is in time.

6. Where the company had been notified to produce upon the trial the letter written by their local agent at S., giving information of the fire, and had refused, it was competent for the plaintiff to prove the contents of the letter by the agent himself.

7. Where the assured, four years after the loss occurred, had made an assignment for the benefit of creditors, it was not error in the court below to reject the assignment, when offered in evidence by the defendant, to show the breach of a condition forbidding the transfer of a policy or a claim thereunder, either prior or subsequent to a loss, except by the consent of the company; for after a right of action for a loss has accrued, no condition in the policy could prevent a subsequent assignment of the claim. The legal effect of the claim cannot be limited by such a condition; the right to receive the insurance became a chose in action, and as such was assignable, and, if applicable, the condition was null and void, because contrary to law.

ERROR to the Common Pleas of *Northumberland county*.

This was an action of *assumpsit*, brought by Edward Helfenstein, to October Term 1861, against the West Branch Insurance Company, to recover the amount of a loss sustained by him in consequence of the burning of a frame storehouse and a lot of merchandise, alleged to have been covered by a policy of insurance, dated July 31st 1861. To a declaration in the usual form the defendant pleaded *non assumpsit*, payment, and payment with leave, &c., and on the issue thus made up, the parties went to trial.

The defence was, that the plaintiff had violated the following terms and conditions contained in the policy of insurance, viz. :—

"If this policy, or any interest herein, shall be assigned, unless in either case the assent thereto of said company, from the secretary, in writing, be obtained and endorsed thereon, these presents shall thenceforth be null and void." And again: "This policy (or any interest therein), or any claim thereunder, against the said corporation, is not assignable either prior or subsequent to loss, unless by consent of the said corporation, manifested by writing; and in case of any assignment, transfer, or termination of the interest of the insured, or any such claim, either by sale

[West Branch Insurance Co. *v.* Helfenstein.]

or otherwise, without such consent from the secretary, this policy shall thenceforth be void and of no effect, and any liability of said corporation upon such claim shall thenceforth cease."

" In case of any transfer, partial transfer, or change of title in property insured by this company, such insurance shall be void and of no effect; * * * * or if the property herein insured, or any part of it, shall be transferred by any contract or any change of partnership or ownership, then this policy shall be void, unless the consent of the secretary thereto shall be endorsed on this policy."

" All notices shall be served on the secretary;" and the sixth condition annexed to the policy provides that " persons sustaining loss or damage by fire, shall forthwith give notice thereof in writing to the secretary of the company, * * * * and said company shall in no case be deemed to have waived a full, literal, and strict compliance with, and performance of each and every of the terms, provisions, conditions, and stipulations in this policy contained and hereto annexed, to be performed and observed by and on the part of the insured, and every person claiming by, through, or under them, unless such waiver be express and manifest in writing, under the signature of the secretary of said company before any failure on the part of the insured, or any one claiming by, through, or under him, to comply with, and observe, and perform the same shall have occurred. And if any agent of this company, in the transaction of their business, shall assume to violate these conditions, such violation shall be construed to be the act of the insured, and shall render void this policy."

" It is further agreed between said parties, that any violation whatever of the conditions hereto annexed, and which form a part of this policy, shall vitiate and render this policy void and of no effect;" * * * * " and that this policy is made and accepted in reference to the terms and conditions hereto annexed, and form a part of this policy; all of which are to be used and resorted to, in order to explain the rights and obligations of the parties hereto, in all cases of loss or otherwise."

On the trial the defendant gave in evidence the facts on which this defence rested, all which are sufficiently set forth in the opinion of this court.

The court below (JORDAN, P. J.) permitted the plaintiff to prove that William L. Dewart had given verbal notice for him to P. W. Gray, agent of the company, a few days after the fire, which the agent had accepted, and communicated to the secretary of the company by letter immediately; and rejected the defendant's offer to prove that the plaintiff had assigned his policy for the benefit of his creditors.

Under the charge of this court there was a verdict and judgment in favour of plaintiff for $3729.50, whereupon the defend-

[West Branch Insurance Co. *v.* Helfenstein.]

ant sued out this writ, and assigned for error the admission and the rejection of the testimony above mentioned, and the answer given by the court below to the points propounded by defendant as to effect of plaintiff's conduct in selling a portion of the insured goods prior to the fire—in transferring or parting with the possession of part of the storehouse covered by the policy, his omission to give written notice of his loss and damage, and on the power of the agent or secretary of the company to waive the notice required by the terms of the policy.

*Mayer & Ball,* with whom was *W. M. Rockafeller,* for plaintiff in error.—This policy is a contract between the parties, who may incorporate in it such claims, conditions, and stipulations, not contravening the common or statute law of the land, as may be agreed upon, and when thus adjusted, and the policy is issued, it is "*the law established by the parties* for the definition of the relations between them," and must be resorted to, to explain their rights and obligations, and which courts of justice will enforce as made: Trask *v.* State Fire and Marine Ins. Co., 5 Casey 198; Commonwealth Ins. Co. *v.* Sennett, Barr & Co., 1 Wright 205; North-Western Ins. Co. *v.* Phœnix Oil and Candle Co., 7 Casey 448; Trustees of the Fire Association of Philadelphia *v.* Williamson, 2 Id. 196.

The evidence showed that about two months after the insurance had been effected, the insured sold the greater portion of the goods covered by the policy to Messrs. Herb & Deppin. The goods thus purchased had been inventoried by the parties, delivery and transfer made of them, for which they paid the assured $7300. A lease of the building insured was also agreed upon, by virtue of which the vendees of the assured had possession of the premises at the time of the fire, together with a small balance of the goods not yet taken by them. All which was done without the knowledge or consent of the said company, and rendered the policy void from the time of such sale and transfer: Finley *et al. v.* The Lycoming County Mutual Insurance Company, 6 Casey 311; Farmers' and Mechanics' Insurance Company *v.* Simmons *et al.,* 6 Id. 299.

A partial sale of the property insured, in violation of this condition of the policy, renders it void, because the contract was an entirety, and if void in part it must be in toto: Fire Association *v.* Williamson, 2 Casey 196; Noble *v.* James, 2 Grant 278; Columbian Ins. Co. *v.* Lawrence, 2 Peters 25; Farley *et al. v.* Lycoming Co. Mut. Ins. Co., 6 Casey 313.

There was therefore error in the answer of the court to the first point of defendant below.

All the above authorities, and the reasoning upon them, apply with equal force to the second point of the defendant below,

which is believed to be specific enough to cover both the transfer of the goods and the building insured by the same policy, notwithstanding the answer of the court below in construing it to relate to the transfer of the store-room alone; but even in that point of view the court erred, for it is in proof that the assured before the fire, created an estate for years in the premises insured by leasing the same to Herb & Deppin, who were in possession of the same, and enjoying their term at the time of the fire, in violation of the policy.

The policy requires that "persons sustaining loss or damage by fire shall *forthwith* give notice thereof in writing to the secretary of the company," and the policy itself provides that "all notices shall be served on the secretary." This is a condition precedent: Angell on Insurance, §§ 225, 226; The Inland Insurance and Deposit Company *v.* Stauffer, 9 Casey 397.

It was not shown, nor can it be in any sense fairly implied from the evidence, that any notice whatever of the loss by fire was in this case served on the secretary; proving that Mr. Gray the *sent* a letter (in the ordinary way) several days after the fire to secretary residing at Lock Haven, seventy miles from Treverton, and that a few days afterwards the secretary happened to come to Sunbury and make inquiries of the agent in relation to the fire, is not sufficient of itself, without more, *to prove service of notice.*

Upon this point, and in answer to the 3d point of defendant below, the court said to the jury "the notice given to Mr. Gray was not sufficient;" but was that communicated to the secretary and acted upon by him? If it was, it was sufficient. The court submit it to you to determine when the notice was given and received by the secretary, if sent forthwith, immediately, or within a reasonable time, and if acted upon by the secretary? If it was, it is sufficient.

In this instruction the court assumed that notice was given and received by the secretary, and only submitted to them to determine when the same was given, whereas the whole question of notice was one of fact for the jury. The contract required *written notice* to be served on the secretary, and the court directed the jury to ascertain *when* service of such notice had been made, when there was no evidence at all of such service, and when it was clearly the duty of the court to have so instructed the jury: Sykes *v.* The Perry Co. Mutual Fire Ins. Company, 10 Casey 79. To say that if notice was sent immediately it was sufficient, is to alter the contract of the parties, which required *service forthwith.*

This condition is in the nature of a warranty, or condition precedent, and must be strictly complied with: Murgatroyd *v.*

Crawford, 2 Yeates 420; see also Trask *v.* The State Fire and Marine Insurance Company, 5 Casey 198.

The court, in their answer to the 4th point of defendant below, admit that, according to the terms of the policy, the agents of the company could not waive or dispense with the want of notice in writing to the secretary, but say that if "there was a waiver, it was on the part of the secretary," in which there is manifest error, if the policy of insurance is a binding contract between the parties, condition sixth prohibiting such waiver positively, unless in writing. It is not pretended that there was any evidence of a waiver other than was shown by the acts and conduct of the secretary of the company; but as the parties have dictated for themselves the kind of evidence required to prove waiver, it can be shown in no other way: North-West Ins. Co. *v.* Phœnix Oil and Candle Co., 7 Casey 448.

The court also erred in permitting the plaintiff below to prove what notice Dewart gave for Helfenstein to Gray, without requiring him to show such notice, or such waiver as the condition above referred to required.

Also, in rejecting the offer of the defendant below to prove that plaintiff had made an assignment of the policy, on which suit was brought, for the purpose of showing a violation of a clause of the policy, which formed one of the considerations moving between the parties at the consummation of the contract.

Besides, the plaintiff below having put in issue the whole contract, any evidence going to show a breach of its conditions by him was pertinent, and should have been admitted: Cole *v.* Bolard, 10 Harris 431; Fitzwater *v.* Stout, 4 Id. 22.

*Charles A. Kutz* and *W. C. Lawson*, with whom were *J. B. & S. J. Packer*, for defendants.—We assent to the doctrine that this case is to be decided according to the contract law established by the parties for the definition of the relation between them; but in this, as in all others, it is not merely the words but the sense of the law that makes the law.

If the condition annexed to the policy referred to in the first specification of error, be considered sufficiently comprehensive to embrace both real and personal, it cannot receive the construction contended for by the plaintiff in error, and be held, where there has been a sale of a part of the property insured, to avoid the contract as to property not sold or transferred. Finley *v.* The Lycoming County Mutual Insurance Company, 5 Casey 311, does not support any such doctrine.

The words of this condition are, "In case of any transfer, partial transfer, or change of title in property insured by this company, such insurance" (not the policy) "shall be void and

of no effect," &c.   What insurance?   Why, clearly, only that upon the property which may have been transferred, and not that upon the property which remains in the hands of the insured, and has never been the subject of a transfer, partial transfer, or change of title.

The very term "merchandise," used in the policy, showed that the subject of the insurance was to be open to trade and traffic, and there are no restrictions imposed either as to time or amount of sales to be made, nor covenants in reference to the amount of stock to be kept on hand.

It is suggested that insurances against fire are made in confidence that the assured will use all precautions to avoid the calamity insured against which would be suggested by his interest, and that therefore such a transfer as was made in this case rendered the policy void.   The answer is, that the parties fixed in their contract the quantum of risk each was to assume; the company, for the consideration received by them, assuring the three-fourths, and leaving the one-fourth of the risk resting upon the insured.   As to the real estate embraced in this policy, and the personal property remaining unsold at the time of the fire, this relative degree of responsibility would continue just as when the insurance was effected, and there would be no inducement on the part of the assured to violate the confidence reposed in him.

The defendant's second point assumes the fact to be, without any evidence to support it, that a sale, transfer, and change of title of the insured property had been made, and the court, in their answer, took it for granted that there had been a change of possession, a leaving of the property for some time, the time being indefinite.   This was a statement of the facts of the case to the jury, more favourable to the defendants below, than the testimony would warrant; for one of the plaintiff's witnesses states positively that the store was owned by and in possession of Helfenstein at the time of the fire, and although Mr. Herb stated, in his cross-examination, that they took possession of the store on the 1st of October, the other testimony explained fully what Mr. Herb meant, by this expression, and he himself fixes his exact meaning immediately after by saying, "we had possession only of the goods that were inventoried."

If Helfenstein had leased the store-room, as the counsel for plaintiffs in error now contend he did, to Herb & Deppin, that fact would not have avoided the policy.   There is no condition or stipulation in this policy requiring the insured to occupy the premises himself, and there is nothing in it nor in any established principle of law which would prevent him from leasing to another: Fire Association *v.* Williamson, 2 Casey 196.

The obvious meaning of this fourth condition is to prevent a

[West Branch Insurance Co. *v.* Helfenstein.]

change, or transfer, or partial transfer of the TITLE to insured property without the consent of the company.

In answer to the 3d error assigned, it was said there was a full compliance with the requirements of the sixth condition annexed to the policy, and the jury so found the fact. The court instructed the jury that the notice to Gray was not sufficient, but submitted it to them to determine whether the notice was communicated to the secretary, and acted upon by him; when the notice was given and received by the secretary, that if sent forthwith, immediately, or within a reasonable time, and acted upon by the secretary, it was sufficient.

The 4th error assigned is answered by the fact that there was actual notice to the secretary, and that clause in the policy clearly refers to a waiver by agents.

The object of the evidence referred to in the 5th assignment of error was to show what the notice was which Gray the agent had sent to the secretary. We had notified them to produce the letter, they had refused, and it was competent to prove the contents.

The evidence offered by the defendants below, the rejection of which is the 6th error assigned, was a general assignment for the benefit of creditors, made by the insured nearly four years after the commencement of this action, and after the rights of the parties had been fixed.

The opinion of the court was delivered, October 31st 1861, by

WOODWARD, J.—Assenting fully to the main proposition of the plaintiff in error, that a policy of insurance, with all its clauses, conditions, and stipulations, is the law of the relation between insurers and the assured, by which their mutual rights and liabilities are to be defined and measured, we are, notwithstanding, unable to construe certain clauses of the policy now before us, in the manner suggested on the part of the plaintiff in error.

The provision which forbids an assignment of the policy without the knowledge and assent of the company is immaterial, for Helfenstein made no assignment and attempted to make none of his policy.

The fourth condition is said to have been violated by his sale of goods to Herb & Deppin. If he were suing for the value of the goods transferred to those purchasers, the doctrine of Finley *v.* The Lycoming Mutual Insurance Company, 6 Casey 311, would be decisive against him; but the goods in respect of which he claims indemnity, were never sold or transferred to them or any one else. The policy was on a frame storehouse situate in the village of Treverton, and a stock of store goods within the

same. The storehouse was valued at $2000, and the merchandise at $1000.

Some months after the date of the policy, Helfenstein sold to Herb & Deppin all the goods on the lower floor of the store, and admitted them, on the 1st October 1856, to the possession of that part of the storehouse, for the purpose of making merchandise of the goods; but he retained all the goods on the upper floor, and these were proved to exceed in value the $1000 of insurance. The indemnity he claims is for the building and the goods on the upper floor. The question is whether he has forfeited his right to indemnity by failing to give notice of the partial sale to Herb & Deppin. The language of the fourth condition cannot fairly be applied to forbid such a sale, because the policy was on *merchandise*, which is property not to be kept unchanged, but to be used for traffic and commerce. Assuredly the insurance company did not expect the merchant they were insuring would stop his sales or report to them every sale he made. If he lost a thousand dollars' worth of goods in that store by fire, he is entitled to indemnity, without regard to any transfer, partial transfer, or change of title "in other goods" which he may have had in the store at the date of the policy. He cannot and does not claim for the goods transferred to Herb & Deppin. The transfer to them does not impair his right to indemnity for the residue.

Nor can the words of the fourth clause be so construed as to make the admission of Herb & Deppin to a joint possession of the store building, a breach of covenant. Those words do not relate to the possession, but to the title. It is transfer or change of *title* in the property insured, which is forbidden. There was no transfer or change of title of the storehouse or of the goods for which plaintiff now claims indemnity. If the company meant to prevent a change of *occupancy* or *custody*, they should have stipulated against it. We see no more violation of this condition, by admitting Herb & Deppin to the possession of the lower floor of the store, than we should have seen in a change of clerks, porters, or watchmen by Helfenstein. Policies do sometimes forbid a change of tenants without notice, and for a very good reason, but this policy does not. The language of the fourth condition, applicable alike to the real and personal property, relates exclusively to changes of title, and has no reference to the possession. We satisfy those words fully, when we hold that in respect to the goods transferred to Herb & Deppin, Helfenstein could set up no claim, but that in respect to the untransferred portion of the goods and the storehouse, his claim is unimpaired.

Now as to the next point of notice. The sixth condition of the policy binds persons sustaining loss by fire to give notice thereof in writing "*forthwith*" to the secretary of the company.

[West Branch Insurance Co. *v.* Helfenstein.]

The fire occurred on Saturday, 4th of October. The same day, Helfenstein went to Sunbury to see Gray, the local agent, and through him to give notice to the company of the loss. Gray was not at home, and Helfenstein requested Mr. Dewart to give him notice as soon as he returned. Gray admits that he got the notice on Wednesday next after the fire, and he swore that he communicated it to the secretary by letter immediately. The secretary came down, says this witness, a day or two after I sent the letter up. I asked him if he was going to Treverton. He said it was not necessary to go; that I should state to Helfenstein to make out a list of his losses and send it up to the secretary, and it would be paid. I told him he had better put it on paper. He put it on paper, and I handed it to Helfenstein first time he came up that I saw him. The secretary told me he would send Ulman down to give me instructions —that he was a travelling agent. Ulman came here about ten days after the fire. He said he had been in Treverton.''

The court submitted it to the jury to say whether the notice was in reasonable time, and they found that it was. The notice is to be forthwith and in writing, and is to be directed to the secretary. Helfenstein started the very day of the fire to communicate notice to the secretary. He had a right to do it through the local agent, and the letter of the agent was a sufficient compliance with that part of the rule which requires the notice to be in writing. But it was the fourth day after the fire that the agent communicated the notice. Was this in time? We held, in Trask *v.* The State Insurance Company, 5 Casey 198, that eleven days was too long a delay, if not excused by circumstances. And again, in The Inland Insurance Company *v.* Stauffer, 9 Casey 402, that a delay of written notice for eleven days was not excused by a verbal notice to a director and an agent of the company. In the case of The State Mutual Fire Insurance Company *v.* John Roland, MS. of October Term 1860, under a policy similar to the present, a written notice by the agent of the company, sent to the secretary four days after the fire, at the instance of the assured, was held sufficient.

The doctrine deducible from these cases is, that notice is a condition precedent to the right of recovery, and where it is stipulated to be given forthwith, the condition imposes upon the assured due diligence under all the circumstances of the case. And this is the rule as given in Angell on Insurance, § 231. The assured may be necessarily occupied a day or two after a fire in providing for his family, or for the safety of goods that have been rescued, and which the insurance company would have to pay for if not taken care of. It would be very unreasonable in such cases to construe the stipulation for notice forthwith so sharply as to make his prudent and proper conduct the ground

[West Branch Insurance Co. *v.* Helfenstein.]

of denying him the stipulated indemnity. In the case of Edwards *v.* The Baltimore Fire Insurance Company, 3 Gill 176, the policy required the assured forthwith to give notice to the underwriters of any loss. The mail left the place of loss for Baltimore on Monday, Wednesday, and Friday. The fire took place on Friday night, and the assured did not give notice by mail till the next Wednesday. All the circumstances attending the condition of the property and the efforts of the assured to collect and preserve it were left to the jury, to determine whether he was not excused for not mailing his letter in due season. There was a delay of more than five days, and it was not held fatal to the plaintiff's right. We depart from no rulings of our own, and we violate no safe precedents, when we decide that, all things considered, written notice of the plaintiff's loss was given to the secretary within reasonable time after the fire. We are sure the company regarded the plaintiff's conduct as a substantial compliance with his covenant, for the secretary acted upon the notice, not only without cavil or objection, but with an express promise to pay, made through the agent. The thought of taking exceptions to the notice seems not to have entered the secretary's mind so late as the 5th January 1857, for on that day we find him writing to Helfenstein that the objection of the company to paying his loss was founded on *the transfer of part of his goods.* Doubtless that was the objection. Down to that time no objection had been taken to the promptness of the notice, but, on the contrary, all the conduct of the secretary indicated that the notice was satisfactory. We do not put the case upon a waiver, and therefore do not run against the very sharp provision of the 6th clause, which requires every waiver to be evidenced by a writing, but we hold that under the special circumstances of the case, the notice was given in substantial compliance with the condition of the policy. There were no laches to be waived. Starting on the very day of the fire to send notice to the secretary through the company's accredited channel, and causing written notice to go to the secretary within five days after the fire, one of which days was Sunday, was due diligence, was giving written notice forthwith within the spirit and meaning of the policy. We refer ourselves to the subsequent conduct of the company's agent, not as ratification of an incompetent notice, but as fortifying the above conclusion that the notice was seasonable and sufficient.

The error assigned upon the admission of Gray as a witness was not pressed in argument. There was no ground for it.

The last error assigned was upon the rejection of the assignment of Edward Helfenstein for the benefit of his creditors, made the 8th February 1861, more than four years after the loss accrued, and three and more after this suit was brought. The

[West Branch Insurance Co. *v.* Helfenstein.]

policy, bristling all over with sharp conditions, has one for this occasion, and the company attempt to impale the plaintiff upon it. The condition is, that neither the policy nor any claim thereunder shall be assigned either prior or subsequent to a loss, except with the consent of the corporation, manifested in writing, and in case of transfer, without corporate consent, "this policy shall thenceforth be void and of no effect, and *any liability of said corporation upon such claim shall thenceforth cease.*"

However competent it was for the company to make their contract of insurance dependent on such a condition, it was not competent for them to limit the legal effect of a claim thereunder after loss. Helfenstein acquired, by reason of the loss, a legal right to receive so much money at the hands of the company. That chose in action he might assign. If not assigned before suit, the writ was properly issued in his name alone; if assigned after suit, the court will see that the money when paid by the defendant goes to the proper party. But the condition appealed to is no defence for the company. If it is applicable to a case circumstanced like this, it is void and null, because opposed to the law of the land.

The judgment is affirmed.