WOODWARD ABRAMS and J. E. COCHRAN vs. MICHAEL
SHEEHAN.

*What will be deemed Notice to a Purchaser, of Prior equities—
Rule for the Construction of a written order—Assignment of
Rent—Estoppel.*

Where a person has information to put him on inquiry as to the title of
property he is about to purchase, he is affected with notice of prior equities
in respect thereof.

In the construction of a written order from a landlord to his tenant, to pay
the rent of the premises to a third person, the true intention of the parties
executing the paper must govern; and its natural import and construction
is to be found, not so much in a technical adherence to its isolated terms, as
in a reasonable interpretation of its provisions, under the circumstances
connected with it, explanatory of its meaning and purpose.

Where a landlord gives an order on his tenant, which he accepts, to pay the
accruing rent to a third person, such person thereby acquires an equitable
lien on the rent.

Where a house and lot, the separate property of the wife is leased by the
husband and wife, and he with her knowledge and consent, and by her
authority, gives an order on their tenant, which he accepts, to pay the
accruing rent to a third person for value received, and the property is
subsequently mortgaged by the lessors, and purchased by the mortgagee
under a decree of foreclosure, with full knowledge of all the facts, he is
estopped from claiming the rent so assigned.

APPEAL from the Court of Common Pleas.

This was an action of replevin brought by the appellee
to recover certain goods in the possession of the appellants,
and withheld by them. The appellants avowed the taking
of the goods under distress for rent in arrear for the months
of April, May and June, 1873, the amount so due and in
arrear being $195. The appellee pleaded to the avowry,

1st. That the said sum of $195, at the time the distraint was laid, was not in arrear and unpaid to the avowants. 2nd. That at the time the said rent accrued, the appellee was not the tenant of the avowants. 3rd. That on the first day of May, 1868, a certain Henry Schofield and Susan, his wife, leased to this plaintiff, certain premises on Pratt street, in Baltimore city, for the term of ten years, reserving a yearly rent of twelve hundred dollars, payable in monthly instalments of one hundred dollars. That by the terms of said lease, which was duly executed, acknowledged and recorded, the receipt of either of the said lessors was made sufficient for the payment of any money. That afterwards, to wit: on or about the 28th day of November, 1870, said Henry Schofield, with the full knowledge, consent and approbation of said Susan, and acting for her and himself, for value received, assigned to a certain Robert Fowler, the rent mentioned in said avowry, and directed this plaintiff to pay said rent to said Fowler, which assignment or order was accepted by this defendant—of all of which proceedings the said avowants had knowledge and notice. That afterwards, the said avowants, with notice and knowledge as aforesaid, took from said Schofield and wife a mortgage of said premises; which mortgage was afterwards foreclosed, and the property was sold under these proceedings, and was purchased by said avowants, with notice and knowledge as aforesaid. Whereupon, the said defendant says, that the one hundred and ninety-five dollars of said rent named in said avowry, was not due and in arrear to the said avowants, but to said Robert Fowler; and this he is ready to verify, &c. 4th. That prior to the execution of said mortgage, mentioned in the third plea, the said Susan Schofield assigned the rent mentioned in said avowry to Robert Fowler, and said avowants had notice and knowledge of said assignment by said Susan Schofield, the owner of the premises.

The avowants joined issue on the first and second pleas of the plaintiff, and replied to his third plea as follows:

1. That the said Henry Schofield did not assign to the said Robert Fowler, the rent mentioned in the avowry, in manner and form as the said plaintiff hath alleged.

2. And that the said Henry Schofield did not assign to the said Robert Fowler the rent mentioned in said avowry, with the full knowledge, consent and approbation of the said Susan, his wife, nor as her agent, nor in her behalf.

3. And that the avowants, nor either of them, had notice and knowledge of the facts alleged in the plaintiff's third plea. And of these three replications, they put themselves upon the country.

4. And that the said Susan Schofield held the said premises in the said third plea mentioned, and the rents issuing therefrom, in her own right, to her own separate use, under the provisions of sections 1 and 2, Art. 45, Code Pub. Gen. Laws, and this they are ready to verify.

And to the plaintiff's fourth plea they replied:

That the said Susan Schofield did not assign the rent mentioned as alleged, nor did the avowants have notice and knowledge in the manner and form alleged.

The plaintiff rejoined to the fourth replication to his third plea:

1st. That the rents named in said avowry, were not the separate property of the said Susan Schofield, held by her under the provisions of the Code Pub. Gen. Laws, Art. 45, sections 1 and 2.

2nd. That the said Susan Schofield, prior to the execution of said mortgage, named in said third plea, did assign the rent named in said avowry, to said Robert Fowler, of which the avowants had knowledge and notice.

And the said avowants joined issue on the first rejoinder to their fourth replication to said third plea of the plaintiff.

And to the second rejoinder to said fourth replication, the avowants say that said Susan Schofield did not assign said rent with notice thereof to said avowants in manner and form as said plaintiff hath alleged.

By agreement, the case was tried before the Court, without the aid of a jury.

At the trial the avowants, to support the issues, on their part offered in evidence a lease dated the 1st of May, 1868, and duly executed, from Susan Schofield and Henry Schofield, her husband, to the appellee, of a house and lot on Pratt street, in the city of Baltimore, (being the same property described in a lease to the said Susan, dated the 7th of August, 1867,) for the term of ten years, at $1200 a year, payable in monthly instalments of $100 on the first of each month. It was agreed in the lease that the receipt of either of the lessors should be sufficient for the payment of any money. They also offered in evidence a mortgage of the same premises, dated the 27th June, 1872, from the said Henry Schofield and Susan his wife to the said avowants; and proved a sale to themselves on the 20th of March, 1873, of the said premises, under a decree of the Circuit Court of Baltimore City, for a foreclosure of said mortgage, and a conveyance to them executed the 5th of May, 1873, from the trustee appointed by said decree.

The appellee gave in evidence seven orders from Henry Schofield, directing the appellee to pay to Robert Fowler various sums of money, amounting in the aggregate to $5500, in monthly instalments of $100, being the rent to become due upon the aforesaid premises, known as the "White House Restaurant," the first payment to be made on the 1st of November, 1868, and proved the execution of said orders by Henry Schofield and their acceptance by the appellee. They were admitted subject to exception. The last order was as follows:

BALTIMORE, Nov. 28th, 1870.

Mr. Michael Sheehan:

You will please pay to Mr. Robert Fowler, his heirs or assigns, the sum of five hundred dollars in monthly instalments of one hundred dollars each, in addi-

tion to the six (6) accepted receipts, dated respectively, viz.: Sept. 23rd, 1868, for ($1500) fifteen hundred dollars; March 10th, 1869, for ($500) five hundred dollars; May 12th, 1869, for ($1500) fifteen hundred dollars; February 14th, 1870, for ($500) five hundred dollars; May 16th, 1870, for ($500) five hundred dollars; August 24th, 1870, for ($500) five hundred dollars—said monthly payments of ($100) one hundred dollars each, being rent due me for "White House Restaurant," No. 186 W. Pratt street, for value received.

HENRY SCHOFIELD.

Written on its face—" Michael Sheehan."

(U. S. Stamp, duly cancld., 25 cents.)

The appellee also proved that Henry Schofield executed said orders with the approbation and consent of his wife, and by her authority; and further, that before the mortgage to the avowants was executed, they had received information from Schofield and wife, and also from the appellee, that Mr. Fowler had been collecting the rents of said property for some time under said orders, and that he was entitled to receive them for two or three years yet to come.

The avowants, on the other hand, proved by their own testimony, that the only notice they had of the orders at the time of taking the mortgage was, that they were only for four or five months of the rent to accrue from that time, and was coupled with the statement that Susan Schofield, the wife, had not assented to or authorized the orders for the rent given to Mr. Fowler, and intended to resist any effort on his part to collect it.

*Exception.*—The avowants offered nine prayers, which the Court (GAREY, J.) rejected. To the rejection of their second, third, fourth, seventh, eighth and ninth prayers, which are as follows, the avowants excepted:

Second.—That if the Court shall find as matter of fact, that the avowants had no actual notice that Susan Scho-

field authorized her husband to execute for her the orders offered in evidence, then the avowants are entitled to recover.

Third.—That the order of the 28th of November, 1870, mentioned in the plaintiff's third plea and offered in evidence, is upon its face an order for rent due at the time of its date, and cannot be construed to cover the rent in question.

Fourth.—That all of the orders offered in evidence, except that of the 28th of November, 1870, are inadmissible as evidence, under the issues raised by the pleadings in this cause.

Seventh.—That if the Court shall find, as matter of fact, that the only notice to the avowants was, that there was an order or orders for the rent of said premises, signed by Henry Schofield, and in favor of Fowler, and at the time of said notice were also told that the said order or orders were executed without the consent of Susan Schofield, wife of said Henry, then the avowants are entitled to recover in this action.

Eighth.—That the avowants are not estopped from recovering in this action, by any of the acts and declarations of Susan Schofield, in reference to the rent of said premises, which have been offered in evidence, notwithstanding the Court shall find, as matter of fact, that prior to the date of the mortgage to them mentioned in the evidence, the avowants had notice of such acts and declarations.

Ninth.—That there is no evidence in the cause of such acts on the part of said Susan Schofield, as would estop the avowants from recovering in this action.

The Court rendered a verdict in favor of the plaintiff for the property replevied, and one cent damages, and costs, and judgment was entered accordingly. The avowants appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, GRASON, MILLER and ALVEY, J.

*Jos. Blyth Allston*, for the appellants.

If the appellants had not notice that Susan Schofield had authorized her husband to execute for her the order of November 28th, 1870, or were expressly told that she had not authorized him to do so, then granting even that the execution and acceptance of said order might create an equity as between the parties thereto, it could not affect the right of the appellants to a judgment upon the undisputed facts of the case.

Whether the appellants had notice or no, the order of November 28th, 1870, cannot, upon its face, be construed as an assignment of the rent falling due in April, May and June, 1873.

Whether the appellants had notice or no, and however the order of November 28th, 1870, be construed, it cannot operate as an assignment of the rent distrained for. The rent which was not then due, was an incorporeal hereditament, incident to the reversion, and passed therewith to the appellants. It might have been severed therefrom, but there is no instance in Maryland, or in England, of such severance being effected otherwise than by deed. For being incorporeal it lieth only in grant, is not susceptible of livery and will not pass by parol or mere writing. *Martin vs. Martin*, 7 *Md.*, 374, and cases there cited; *Robins vs. Cox*, 1 *Levinz*, 22; *Marle vs. Flake*, 3 *Salk.*, 118; *Allen vs. Bryan*, 5 *Barn. & Cress.*, 512; *Williams vs. Hayward*, 1 *Ellis & Ellis*, 1040; *Coke Littleton*, 9; *Wood vs. Leadbitter*, 13 *M. & W.*, 839; *Mayfield vs. Robinson*, 7 *Q. B.*, 486; *Duke of Somerset vs. Fogwell*, 5 *Barn. & Cress.*, 875, 882, 886; *Bird vs. Higginson*, 2 *Adol. & Ellis*, 696; and 6 *Adol. & Ellis*, 824; *Woodfall's Landlord & Tenant*, 72, 78, 355.

Susan Schofield, the owner of the reversion, could only convey the same or the rent to accrue, which was incident

thereto, in the manner prescribed by the Acts of Assembly,
i. e., by joint deed with her husband. Her contracts or
orders in reference thereto, whether made by her or in her
behalf by her husband, are null and void, and cannot be
enforced against, and do not estop the appellants, her as-
signees. *Johns vs. Reardon and Wife,* 11 *Md.,* 465;
*Central Bank of Frederick vs. Copeland and Wife,* 18 *Md.,*
305; *Chaney vs. Tipton,* 3 *Gill,* 327; *Steffey vs. Steffey,* 19
*Md.,* 5; *Preston, Trustee, vs. Fryer, et al.,* 38 *Md.,* 221;
*Nicholson's Lessee vs. Hemsley,* 3 *H. & McH.,* 409; *Norris
vs. Lantz & Hyde,* 18 *Md.,* 261, 269; *Burton, et al. vs.
Marshall,* 4 *Gill,* 488, 493; *Nusz, et al. vs. Grove,* 27 *Md.,*
391, 401; *Six vs. Shaner and Wife,* 26 *Md.,* 444.

*William A. Hammond,* for the appellee.

The second and seventh prayers were properly rejected,
because they asked the Court to say that the avowants,
who are plaintiffs *pro hac vice,* (*Evans' Practice,* 361,
*Kearney vs. Gough, et ux.,* 5 *Gill & John.,* 457,) are entitled
to recover, upon the finding of certain facts, omitting
entirely other material facts necessary to the maintenance
of the action, e. g., the fact of rent being due and in
arrear, the correctness and regularity of the distraint pro-
ceedings, &c. and they are therefore erroneous. *Monroe
vs. Woodruff & Robinson,* 17 *Md.,* 159; *Maltby vs. North-
western Va. R. R. Co.,* 16 *Md.,* 445; *Giles vs. Ebbsworth
& Hays,* 10 *Md.,* 346.

The order of the 28th November, 1870, refers to all the
other orders, and actually incorporates them in its own
terms. They were all offered together, and must be con-
sidered together in construction. So considered, it is clear
that the order of November 28th, 1870, was not for rent
due at the time it was given. The language of the orders
of March 10th, 1869, and of May 12th, 1869, excludes any
such idea. Moreover, the testimony of Henry Schofield
shows conclusively that the orders were given to cover the

rents of the White House property to become due. The third prayer was therefore properly rejected. *Md. Ins. Co. vs. Bossiere,* 9 *G. & J.,* 121; *Owings vs. Emery & Gault,* 7 *Gill,* 405.

Upon the same reason and authority, the other orders being referred to by the very terms of that of November 28th, 1870, were clearly admissible for the purpose of explaining that order, if for no other purpose, and the fourth prayer was properly rejected.

The 8th and 9th prayers are identical in their import, and are intended to present the principal questions in the cause.

A lessor may assign the rent to become due upon a lease without assigning the reversion. *Taylor's Landlord & Tenant,* 314; *Willard vs. Tillman,* 2 *Hill,* (*N. Y.,*) 274; *Demarest vs. Willard,* 8 *Cowen,* 206; *Allen vs. Bryan,* 5 *Barn. & Cress.,* 512; *Dixon vs. Nichols, et al.,* 39 *Ills.,* 384; *Childs vs. Clark,* 3 *Barb. Ch. Rep.,* 52; *Leonard vs. Burgess,* 16 *Wisconsin,* 41; *Williams vs. Hayward,* 28 *L. J. Q. B.,* 374; *Martin vs. Martin,* 7 *Md.,* 368; *Morton vs. Naylor,* 1 *Hill,* 583.

Such an assignment need not be in writing at all, especially if the tenant is made aware of it, and promises to pay the rent as it falls due to the assignee. *Tatlock vs. Harris,* 3 *Term,* 180; *Mowry vs. Todd,* 12 *Mass.,* 281; *Dennis vs. Twitchell,* 10 *Metcalf,* 180; *Farley vs. Thompson,* 15 *Mass.,* 19; *Stone vs. Patterson,* 19 *Pick.,* 476; *Dunn vs. Snell, et al.,* 15 *Mass.,* 481.

If the assignment of the rent in question be valid, then, clearly, the avowants having taken the mortgage under which they claim title, after the assignment had been completed, are estopped from recovering in this case. They only acquired the interest which the mortgagors had at the date of the recording of that mortgage. Under the evidence in the cause, and the authorities, neither Schofield nor his wife could have maintained an action for the rent

in question, and the avowants can certainly claim no greater or other rights in said property or rents, than were possessed by these under whom they claim. *Code, Art.* 64, *sec.* 10.

It is contended, that these rents were the separate property of Mrs. Schofield, and under the provisions of Article 45 of the Code could only be assigned or conveyed by a conveyance executed by her husband and herself jointly, and as she did not sign the orders in this case, they are, therefore, utterly void, and of none effect.

These rents, were mere personal property, and did not require any instrument of writing at all to assign or convey them; and the testimony clearly shows that both husband and wife did *join in the parol conveyance* of them, the only conveyance that was necessary for the purpose. True, this parol contract or agreement was evidenced by the orders filed in this case, but supposing these orders to be invalid, *"utile per inutile non vitiater."* A parol contract, not required to be in writing, is not destroyed by a futile attempt to reduce it to writing.

A married woman may appoint her husband her agent to make a contract in regard to her separate property, and she will be bound by his acts. *Jarden and Wife vs. Pumphrey,* 36 *Md.,* 361; *Wilson vs. Sands,* 36 *Md.,* 41. He may even contract in writing if the Statute of Frauds should require it, and she will be bound by her oral ratification. 1 *Parsons on Cont.,* 52. A married woman may be bound by an equitable estoppel. *Frazier vs. Gelston,* 35 *Md.,* 314; *Hale vs. Timons,* 2 *Rich. Eq. Rep.,* 120; *Davis vs. Tingle,* 8 *B. Monroe,* 539; *Wright vs. Arnold,* 14 *B. Monroe,* 643. She may create a lien by a deed defectively executed. *Berritt vs. Oliver,* 7 *G. & J.,* 191; *Brundige, et al. vs. Poor and Wife,* 2 *G. & J.,* 1; *Norris vs. Lantz and Hyde,* 18 *Md.,* 260; *Six vs. Shaner,* 26 *Md.,* 444.

Mrs. Schofield, therefore, could not have claimed the rents in this case as against Fowler. She swears that the

orders were all given with her approbation and consent, and by her express authority to her husband. It is proven that the money received thereon from Fowler was used by her and her husband jointly, and that she acquiesced in the payment of the rents thereunder from September, 1868, more than two years before the order of November 28th, 1870, covering the rents in question, was given. She thus not only expressly assented to, and authorized the giving of the order of that date, but by her acquiescence in the payments under the former orders induced both Fowler and Sheehan to act under that belief and with that view, the one advancing the money on that order and the other accepting it. Her own conduct, therefore, clearly showed her ratification of her husband's representations and acts, and as against the rights and liabilities incurred in view of that conduct and upon the faith of those representations, she would be estopped to deny the validity of those orders. *Adams Express Co. vs. Trego*, 35 *Md.*, 47; *Woodruff & Robinson vs. Munroe*, 33 *Md.*, 146; *Funk vs. Newcomer*, 10 *Md.*, 301; *Stallings vs. Ruby's Lessee*, 27 *Md.*, 150; *Brown and Wife vs. Rowles, Adm'r*, 21 *Md.*, 27; *In re Lush's Trusts, Law R.*, 4 *Ch. App.*, 591; *Frazier vs. Gelston*, 35 *Md.*, 314; *Bigelow on Estoppel*, 473, *et seq.*; *Gregg vs. Wells*, 10 *Adol. & Ellis*, 90.

But if Mrs. Schofield would be estopped to deny the validity of the orders and acceptances, certainly the avowants having taken their mortgage with notice of the facts and circumstances, could occupy no better position. Purchasing lands with knowledge, actual or implied, of an outstanding incumbrance, they must stand in the same situation in which their vendors stood before them. *Md. and N. Y. Coal and Iron Co. vs. Wingert*, 8 *Gill*, 171; *Owens vs. Miller and Mayhew, et al.*, 29 *Md.*, 144.

Information which ought to put a purchaser on inquiry is sufficient notice of a prior equity. Nor will the statement of an interested party made at the time the informa-

tion is given, that the instrument does not affect the land, be sufficient to exonerate a subsequent purchaser or mortgagee from such notice. *Price & Bevans vs. McDonald,* 1 *Md.,* 419.

These principles apply with extraordinary force in this case where the existence of the relation of landlord and tenant was of itself sufficient to put the avowants upon inquiry, and where that inquiry could have been made with so little trouble or inconvenience. See *Taylor vs. Stibbert,* 2 *Ves. Jr.,* 437 ; *Daniels vs. Davison,* 16 *Ves.,* 249, *and* 17 *Ves.,* 433 ; *Allen vs. Anthony,* 1 *Merivale,* 282 ; *Barnhart vs. Greenshields,* 9 *Moore Priv. C.,* 32 ; *Knight vs. Bowyer,* 2 *DeG. & Jones,* 421 ; *Crofton vs. Ormsby,* 2 *Schoales & Lefroy,* 583 ; *Powell vs. Dillion,* 2 *Ball & Beatty,* 416.

Stewart, J., delivered the opinion of the Court.

We find no error in the refusal of the 2nd and 7th prayers of the avowants.

Their right to recover was not a necessary conclusion, from the particular facts enumerated in these prayers. Every other material fact, to make out their case, seems to have been assumed as proved.

The prayers were objectionable on another ground—they assert an erroneous principle as to notice.

If the avowants had sufficient information to put them on enquiry as to the title to the property they were about to purchase, they are affected with notice. *Price and Bevans vs. McDonald, et al.,* 1 *Md.,* 403.

The 3rd and 4th prayers of the avowants were properly refused.

Whether the order of the 28th November, 1870, is upon its face, and by its literal expression, applicable to rent already due and in arrear, is immaterial. The true intention of the parties executing the paper, must govern ; and its natural import and construction is to be found, not so

much in a technical adherence to its isolated terms, as from a reasonable interpretation of its provisions, under the circumstances connected with it, explanatory of its meaning and purpose. *Md. Ins. Co. vs. Bossiere,* 9 *G. & J.,* 120.

This order refers to antecedent orders, which were admissible and necessary to a proper understanding of its meaning, and they must be referred to for that purpose. They all use similar expressions as to the rent, and it is obvious, from their terms and import, they were intended to apply to accruing rent.

The 8th and 9th prayers of the avowants were properly refused. They embrace the same questions, and refer alone to the acts and declarations of Susan Schofield, the wife, in regard to the rent. They assume that notwithstanding the avowants had notice of the orders for the rent, before the date of their mortgage, they are not to be precluded from the recovery of the rent accruing after their purchase. The orders were given to Mr. Fowler by Mr. Schofield, on account of the rents now in controversy, with his wife's assent and authority, and the money advanced thereon was used by husband and wife in carrying on a hotel.

It is stated in *Taylor's Landlord & Tenant,* sec. 428, that an order from a landlord on his tenant, to pay accruing rent to a third person, operates as an assignment of such rent, and that the tenant is bound to pay to such person, whether he has accepted the order or not, and notwithstanding a subsequent notice from the landlord not to pay. According to the proof in this case, the obligation of the tenant is, if possible, made stronger, because the orders upon the tenant were not only given to Fowler, but accepted by Sheehan, the tenant, who made himself responsible for the payment of the rent to Fowler, as it accrued, at least so far as Schofield and wife were concerned. Fowler thus acquired an equitable lien on the rent.

Although it was the separate property of the wife, Schofield the husband, as well as his wife, was interested in

the lease, and acted as the agent of his wife so far as she was concerned.

By the term of the lease the receipt of either was authorized for the payment of the moneys arising therefrom. The husband and wife could thus in conjunction manage the property. *Unger and Wife vs. Price,* 9 *Md.,* 552 ; *Tiernan vs. Poor,* 1 *G. & J.,* 216 ; *Brundige vs. Poor,* 2 *G. & J.,* 1 ; *Hall and Hume vs. Eccleston,* 37 *Md.,* 310.

It would be gross injustice towards others, upon Fowler thus advancing the money, and upon the tenant thus dealing with the husband and wife in good faith, to permit the wife herself, much more those claiming under her with notice, under such circumstances to repudiate any responsibility in such transactions.

This the wife does not attempt in this case ; on the contrary she recognizes the authority of her husband in the settlement of the rent, and does not pretend to deny the validity of the dealings between her husband and the tenant. But the avowants claiming under her, insist she is not to be held bound thereby, and that they are entitled to the rent. The wife recognizes the adjustment of the rent accruing under the lease, and would be estopped from setting up any claim thereto, and certainly the avowants claiming under her with notice, can acquire no better right than she possessed, and are equally estopped. This being the condition of the rent assigned and pledged for the payment of the money advanced ; the avowants in taking a mortgage upon the property, and purchasing the same with full knowledge of these facts, are bound by all the equities which the tenant could enforce against the vendors.

Their title ought and must be postponed to the right of the tenant, and subject to his responsibility under the equitable assignment of the rent, and his agreement to pay the same.

To hold otherwise would result in gross injustice. *Md. and N. Y. Coal and Iron Co. vs. Wingert,* 8 *Gill,* 170 ;

*Owings vs. Miller & Mayhew, et al.,* 29 *Md.,* 144; *Story's Equ.* sec. 395; *Kerr on Frauds,* 183.

The prayers assume the avowants had notice which relieves the case of all embarrassment from questions, as to what shall be the character of the notice to affect parties actual or implied and constructive. The case of *Martin vs. Martin,* 7 *Md.,* 370, referred to in the briefs on both sides, where the property had been rented, after the lien of the judgment against it, has but little application to the questions now involved.

It was held in that case that the purchaser at the sheriff's sale was entitled to the rent falling due after the accrual of his title, though the landlord against whom the judgment had been entered, had anticipated its payment by orders on the tenant, which had been accepted by the tenant. That they afforded no lien to the prejudice of the plaintiff in the judgment, and that persons dealing with the tenant in reference to the rent accruing from the land, acquired rights subordinate to the judgment lien.

The judgment as a lien on the property afforded sufficient notice to the world.

There is no doubt the rent is an incident to the reversion, and the assignee is entitled to it accruing after the assignment, where there has been no severance or reservation of the rent, or other just and equitable appropriation, or discharge of the same; but this right to the rent is subject to all the equities or just demands of the tenants or other incumbrances affecting and controling the payment of the rent.

The right of the reversioner is not necessarily superior to all other demands. The avowants are affected and estopped by the notice they had of the arrangement of the rent in dispute between their vendors and the tenant, and have no just or legal claim to the same, upon the hypothesis of the 8th and 9th prayers.

*Judgment affirmed.*

(Decided 24th June, 1874.)